

Joshua Woodard (Bar #015592)
jwoodard@swlaw.com
Benjamin A. Nucci (Bar #031312)
bnucci@swlaw.com
Audrey E. Chastain (Bar #033998)
achastain@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Rodriguez, individually and on behalf of all similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>Valor Global, LLC,<br><br>Defendant. | No. CV-21-01256-PHX-DWL<br><br>**JOINT MOTION FOR APPROVAL OF PROPOSED FLSA COLLECTIVE SETTLEMENT AND SUPPORTING MEMORANDUM** |

Plaintiff Raymond Rodriguez ("Named Plaintiff"), Opt-In Plaintiffs Mikiko Stott and Chynna Medina (collectively, "Additional Plaintiffs"), on behalf of themselves and on behalf of the potential collective (collectively together with Named Plaintiff and Additional Plaintiffs, the "Plaintiffs"), and Defendant Valor Global, LLC ("Defendant") respectfully request the Court to conditionally certify this action pursuant to 29 U.S.C. 216(b) and approve the parties' proposed settlement.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

On July 20, 2021, Named Plaintiff filed this class and collective action on behalf of himself and other similarly situated Customer Service Representatives ("CSRs"). *See* Dkt.

Snell & Wilmer L.L.P.<br>LAW OFFICES<br>One Arizona Center, 400 E. Van Buren, Suite 1900<br>Phoenix, Arizona 85004-2202<br>602.382.6000

1. Named Plaintiff alleged that he was required to work hours off-the-clock and should have received overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). *Id.*, ¶ 1. Named Plaintiff also alleged violations of the Arizona Wage Act, A.R.S. §§ 23-351-353 (the "AWA"), as well as claims for breach of contract and unjust enrichment. *Id.* Additional Plaintiffs Stott and Medina, also former CSRs with Defendant, opted-in to the action on October 7, 2021 and March 14, 2022 respectively. *See* Dkts. 9, 21.

Defendant denies any wrongdoing under either law and denies it owes Plaintiffs any additional compensation for work performed. *See* Dkt. 11. However, in an effort to avoid the costs and uncertainty of litigation, the parties have agreed to resolve the disputed factual and legal issues on a collective action basis and on the terms set forth in the proposed settlement agreement ("Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

The Settlement Agreement resolves all claims asserted, and all claims (known or unknown) that could have been asserted relating to unpaid wages, wages, minimum wage, and/or overtime compensation arising under the FLSA, the AWA, and/or under contract in this action against Defendant. The Settlement Agreement was crafted at arm's length by experienced counsel on both sides following more than a year of litigation as well as many months of negotiating the terms of the settlement. Defendant has agreed to pay the Plaintiffs, and those individuals that timely opt-in to this action in accordance with the Settlement Agreement (the "Opt-In Collective"), the equivalent of five minutes of overtime for each weekday within the period they were employed with the Company from July 20, 2019 through the approval date of this motion. Half of that amount represents their alleged overtime compensation and the remaining half of that amount representing liquidated damages.

Defendant has separately agreed to pay: (i) $75,000.00 for Plaintiffs' reasonable attorneys' fees and costs; (ii) an incentive award of $5,000.00 to Named Plaintiff Rodriguez for his time and effort in pursuing this litigation and an additional $1,000.00 in exchange for a general release from Named Plaintiff Rodriguez; and (ii) an incentive award of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

$1,000.00 each to Opt-In Plaintiffs Stott and Medina for their time and effort in pursuing this litigation and in exchange for a general release.

As demonstrated below, the relief obtained for Plaintiffs represents a recovery that satisfies all criteria for fairness, reasonableness, and adequacy under the FLSA and Ninth Circuit law.

## II.    BACKGROUND

### A.    Summary of Plaintiffs' Claims and Defendants' Defenses.

Plaintiffs were CSRs for Defendant in its Black Canyon Call Center located in Phoenix, Arizona. The operative complaint alleges that Defendant failed to compensate Named Plaintiff and those similarly situated for all time worked, in violation of the minimum wage and overtime provisions of the FLSA and the Arizona Wage Act. Specifically, Named Plaintiff alleges that he and others were required to work off-the-clock by booting up and logging into their computers in order to take their first call at their scheduled shift start time. Named Plaintiff asserts that the "pre-shift procedure" regularly takes 15 minutes per shift or more.

Defendant asserts that it complied with the FLSA, Arizona's Wage Act, and other laws applicable to the Named Plaintiff and those similarly situated, and denies that they were not compensated for all time worked. Defendant further asserts that they required CSRs to accurately report all time worked, including time spent logging on and off their computers. Defendant further alleges that computers were always turned on and that any log-in time was *de minimis*. Defendant also maintains that it provided other robust timekeeping policies and procedures, including the CSR's ability to request that their time clocks be adjusted to account for issues both in and out of their control – again, all in an effort to capture and pay for time worked.

### B.    Procedural History.

Named Plaintiff filed his Complaint on July 20, 2021. *See* Dkts. 1. Additional Plaintiffs Stott and Medina opted-in to the Action on October 7, 2021 and March 14, 2022 respectively. *See* Dkts. 9, 21. Throughout the period, the parties engaged in both voluntary

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

and required disclosures of documents and participated in other formal and informal information sharing. The amount of information disclosed was significant, encompassing, allowing the parties to assess the strengths and weakness of their positions.  In addition, the parties have undertaken considerable factual and legal research of their claims and defenses.

### C. Settlement Negotiations.

The parties engaged in the informal exchange of discovery and participated in several calls to narrow the issues. After extensive negotiations, the parties agreed upon the general settlement terms, which were ultimately reduced to the agreement set forth as Exhibit 1.

## III. CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)

Pursuant to the Settlement Agreement, the parties have consented to conditional certification of the collective so that settlement funds may be distributed to those who opt-in to this action.

"Federal district courts have taken at least three approaches to determining whether plaintiffs are 'similarly situated' for purposes of § 216(b): '(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1996 version of Rule 23 for "spurious" class actions.'" *Stickle v. SCI Western Mkt. Support Ctr, L.P.*, No. 08-CV-083-PHX-MHM, 2009 WL 3241790 at *2 (D. Ariz. Sept. 30, 2009) (quoting *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D. Cal. 2006) (citation omitted). "However, district courts within the Ninth Circuit generally follow the two-tiered or two step approach for making a collective action determination." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (citing *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 168-169 (1989); *Hutton v. Bank of Am.*, No. 03-CV-2262-PHX-ROS, 2007 WL 5307976 at *1 (D. Ariz. Mar. 31, 2007)).

"Under this approach, at the first, or the 'notice stage,' the court determines whether the proposed class members are similarly situated employees and therefore should be notified about the pending action." *Barrera v. US Airways Grp., Inc.*, No. 12-CV-02278-

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4885-4312-5042

PHX-BSB, 2013 WL 4654567 at *2 (D. Ariz. Aug. 30, 2013) (citing *Hoffman-LaRoche*, 493 U.S. at 169). To meet the "similarly situated" requirement, the plaintiff need only make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Wood v. TriVita, Inc.*, No. 08-CV-0765-PHX-SRB, 2009 WL 2046048, at *2 (D. Ariz. Jan. 22, 2009) (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)) (internal quotation marks omitted).

Here, Named Plaintiff seeks a collective of:

All current and former Hulu Customer Service Representative employees who worked for Valor Global, LLC in Arizona at any time from July 20, 2019 through present that did not sign an arbitration agreement.

Named Plaintiff is similarly situated to the Additional Plaintiffs and these putative collective members for several reasons. *See Juvera*, 294 F.R.D. at 520 ("Courts have held that conditional certification requires only that 'plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.'") (quoting *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007)); *Wertheim v. State of Arizona*, No. 92-CV-453-PHX-RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 2013) ("All that need be shown by plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together provides judicial efficiency and comports with the broad remedial policies underlying the FLSA."). The court makes the similarly situated determination "based on the pleadings and any declarations that have been submitted." *Barrera*, 2013 WL 4654567 at *2 (citation omitted).

First, they were all employed in the same position (Customer Service Representatives), within the same team (Hulu), and within the same state (Arizona). Second, they performed the same primary job duties which included "answering telephone calls and chat messages from Defendant's clients, troubleshooting and resolving concerns and client issues, and confirming client account information." *See* Dkt. 1, ¶¶ 17, 44. Third, they are alleged to have all worked over 40 hours per workweek and were paid on an hourly

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4885-4312-5042

basis. *Id.* ¶¶ 18-19, 46. Fourth, Named Plaintiff, Additional Plaintiffs, and the putative collective members are alleged to have been subject to Defendant's unlawful "off-the-clock" policies whereby they were required to perform pre-shift work without compensation. *Id.* ¶¶ 22-26, 44. Thus, they are alleged to have all been subjected to a common policy that violated the FLSA. Fifth, Named Plaintiff, Additional Plaintiffs, and the putative collective members are alleged not to have been paid at the statutorily required rate of one-and-a-half times their hourly rate for their time spent working "off-the-clock." *Id.* ¶¶ 27, 30. Therefore, Named Plaintiff and Additional Plaintiffs are similarly situated to the putative collective members warranting conditional certification of the proposed collective.

Further, the Court should approve the parties' proposed notice, method of dissemination, and a notice period of 45 days. *See* Notice of Right to Participate in a Collective Action Lawsuit and Settlement ("Notice"); *Kuzich v. HomeStreet Bank*, No. CV-17-02902-PHX-GMS, 2018 WL 3872191, at *4 (D. Ariz. Aug. 15, 2018). The Notice, which the parties propose to be mailed, provides notice of the pendency of the action, the settlement, and of the opportunity to opt-in to participate in the collective action settlement. Named Plaintiff's legal claims are accurately described. Putative collective members are advised that they are not required to participate. *See Hoffman-LaRoche*, 493 U.S. at 170; *O'Neal*, 2016 WL 3087296 at *6 (authorizing notice to be sent "via regular mail"). If a putative collective member does not opt-in, the Notice advises them that they are not bound by the settlement. The Notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action. *See* 29 U.S.C. § 215(a)(3). By consequence, the proposed Notice, its method of dissemination, and the notice period, should be approved by the Court.

## IV.    <u>THE SETTLEMENT</u>

As a direct result of litigation and the settlement negotiations, Plaintiffs believe Defendant has agreed to a settlement that provides Plaintiffs and the Opt-In Collective substantial value and the relief intended under the FLSA.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

### A.    Compensation for Unpaid Overtime.

Defendant has agreed to pay Plaintiffs and each Opt-In Collective member the total equivalent of 5 minutes of overtime premium rate for every single weekday of that individual's tenure (as opposed to only full weeks worked) within the entire 3 year statute of limitations. Half of that amount (2.5 minutes) represents compensation for unpaid overtime, while the remaining half (2.5 minutes) represents liquidated damages. The parties view this as a compromise between Plaintiffs' position that they are owed approximately 15 minutes of unpaid overtime per workday and Defendant's position that Plaintiffs are owed nothing. This compromise was reached after extensive review of documents produced by Defendant concerning it's pay practices and time tracking of CSRs. Thus, the parties have fairly allocated these funds according to a compromise on the hours allegedly worked and amounts allegedly earned during the relevant statute of limitations period.

The amount allegedly owed to each of the Plaintiffs and any Opt-In Collective members will be calculated based on the weeks worked during the claim period and the overtime rate of pay according to the payroll records produced.  If all putative collective members were to appropriately opt in, the average settlement amount per Opt-In Collective member, which includes Plaintiffs, would be $416.76, with the individual amounts ranging from $3.24 to $2,254.32, depending upon the amount of time each individual worked during the relevant period of time.  *See* Exhibit 1.

While Defendant denies that either of the Plaintiffs or that any Opt-In Collective members worked uncompensated time, Defendant acknowledges that the allegations in this litigation include that each of the CSRs worked 15 minutes or more of uncompensated time per shift. Defendant recognizes that such allegations would be time-consuming to defend and acknowledges that Plaintiffs believe they are owed for alleged uncompensated time worked and that the reduction in the alleged uncompensated time worked for purposes of the settlement is a fair compromise in light of Defendant's defenses.

4885-4312-5042

For each settlement payment of unpaid time, 50% of the payment will be considered back wages and subject to all appropriate withholdings and 50% of the payment will be considered liquidated damages not subject to withholdings.

### B.    Attorneys' Fees and Costs.

Plaintiffs' attorneys' fees and costs in the total amount of $75,000.00 will be paid by Defendant in accordance with the FLSA and pursuant to the Settlement Agreement.  None of the money being paid to Plaintiffs or any Opt-In Collective members is being reduced by attorneys' fees or costs because Defendant has agreed to pay the amount set forth above to cover Plaintiffs' attorneys' fees separate and apart from the recovery to Plaintiffs.  *See* Exhibit 1. Additionally, the amount of attorneys' fees and costs do not include any future fees or costs incurred in an effort to obtain Court approval of the settlement, administer the settlement, or maintain communication with Opt-In Collective members and defense counsel to effectuate the settlement entire settlement process.

### C.    Incentive Award and General Release Consideration.

Named Plaintiff will receive an incentive award of $5,000.00 as compensation for bringing this case, serving as the collective representative, actively monitoring and assisting their counsel in litigating, and resolving this case. Additionally, Named Plaintiff and Additional Plaintiffs will each receive $1,000.00 for a general release (as compared to the limited release for the collective) of their claims against Defendant. The incentive award and consideration for the general release will be paid separate and apart from, and will not diminish, the payment of wages to themselves or the Opt-In Collective.

## V.    JUDICIAL APPROVAL OF COLLECTIVE ACTION SETTLEMENTS

Employees cannot waive claims for unpaid wages under the FLSA without court approval.  As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), in the "context of suits brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness."

4885-4312-5042

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Accordingly, where an employer and an employee have negotiated a settlement agreement, an employer will be relieved of liability from future lawsuits only if the agreement is supervised by the Department of Labor ("DOL") or approved by a federal court. *See Thornton v. Solutionone Cleaning Concepts, Inc*., CIV F 06-1455, 2007 WL 210586, at \*3 (E.D. Cal. Jan. 26, 2007). The Ninth Circuit has implicitly indicated that it would follow the Eleventh Circuit's decision in *Lynn's Food Stores*. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). The Arizona District Court has also relied on *Lynn's Food Stores*. *See Hand v. Dionex Corp*., No. CV 06-1318-PHX-JAT, 2007 WL 3383601, at \*1 (D. Ariz. Nov. 9, 2007).[1] Accordingly, the parties jointly ask for the Court's approval of the proposed settlement in this case.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

As a general matter, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Corn'n of City and Cnty. of S.F.* ("*Officers for Justice*"), 688 F.2d 615, 625 (9th Cir. 1982); *accord U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("We are committed to the rule that the law favors and encourages compromise settlements. We recently noted that there is an overriding public interest in settling and quieting litigation.") (*citing Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976)). This policy of encouraging settlement of litigation equally applies in the context of FLSA litigation when there are bona fide issues in dispute and employees are represented by "an attorney who can protect their rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

In reviewing an FLSA collective action settlement, courts generally apply the same

---

[1] In *Hand*, the District Court addressed the issue when approving an FLSA settlement. *See* 2007 WL 3383601, at \*1. The parties asked for an Order to be entered specifically approving their settlement agreement. The Court approved the settlement agreement, noting that typically, "the Court does not rule on private settlement negotiated between parties. But because Plaintiffs filed a FLSA action against Defendant, the parties must seek approval of their stipulated settlement in order to ensure enforceability of the Settlement Agreement." *Id.* (*citing Lynn's Food Stores*, 679 F.2d at 1352-53 and *Thornton*, 2007 WL 210586).

standard used in reviewing a settlement of a Rule 23 class action. *See*, *e.g.*, *Su v. Elec. Arts, Inc.*, No. 6:05-cv-131, 2006 WL 4792780, at *3 (M.D. Fla. 2006) ("In determining whether the settlement is a fair and reasonable resolution, the Court adopts the factors used in approving the settlement of class actions ..."); *Camp v. Progressive Corp.*, 2004 WL 2149079, at *4 (E.D. La. Sept. 23, 2004) (same).

In the Ninth Circuit, courts determine whether a class action settlement is fundamentally fair, adequate, and reasonable by looking at the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Further, in a FLSA case in particular, it is important to consider the policy purposes of the FLSA in determining whether the settlement is fair. *See Goudie v. Cable Commc'ns, Inc.*, No. CV 08-507—AC, 2009 WL 88336, *1 (D. Or. Jan. 12, 2009) ("In reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes."); *Sanderson Farms*, 568 F. Supp. 2d at 717 ("The Court's role [in reviewing a FLSA settlement] is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to [Rule 23], and derives from the special character of the substantive labor rights involved.").

In reviewing the totality of the circumstances of an FLSA settlement, the Court may consider some or all of the following case specific factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Linney v.*

4885-4312-5042

*Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon*, 150 F.3d at 1026.[2] As shown below, a review of the relevant factors as to this FLSA settlement supports this Court's approval of the proposed settlement.

### A.    The Probability of Plaintiffs' Success on the Merits.

The first factor concerns the probability of Plaintiffs' success on the merits of their case. *Linney*, 151 F.3d at 1242. A court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should a court substitute its opinion for that of Class Counsel and Plaintiffs. Indeed, as the Ninth Circuit explained:

> Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (internal citations omitted).[3]

Here, Plaintiffs and their counsel, who are experienced in collective/class and FLSA cases, have carefully assessed the probability of ultimate success on the merits vis-a-vis the risks and costs of establishing liability and damages. While Plaintiffs believe that their case is exceedingly strong — and negotiated the settlement on that basis — a finding of liability

---

[2] *See also Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) ("After reviewing the relevant case law, and having considered the history and policy of the FLSA, the Court finds that the following factors should be considered when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.") (citing cases).

[3] The Court may not modify the proposed settlement, but must approve or disapprove of the proposed settlement "as a whole" in relation to all of those covered by it. *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

is never assured. This is especially true in light of the fact that Defendant was zealously represented by counsel with experience specifically related to litigating FLSA claims.

Moreover, this case presented *bona fide* disputes over numerous legal and factual issues, including, but not limited to, whether a collective action was appropriate or warranted; whether Plaintiffs worked off the clock; whether Plaintiffs failed to report all time worked; whether Plaintiffs were compensated for all time worked; whether Plaintiffs could prove the amount of damages owed with reasonable specificity; whether the time allegedly worked was *de minimis*; whether Defendant willfully violated the statute or acted in good faith; and whether liquidated damages were appropriate. As such, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief would be obtained. Accordingly, although Plaintiffs were confident that they would develop a convincing case, they were also aware that juries are unpredictable. *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997) ("[T]he one constant about litigation . . . is that the ultimate jury result is uncertain, unknown and unpredictable.").

## B.    Continued Litigation Would Be Long, Complex, and Expensive.

The expense, complexity, and possible duration of litigation are the next factors considered in evaluating the reasonableness of a settlement. *See Linney*, 151 F.3d at 1242. Here, litigating this action through trial would certainly be expensive and time-consuming. Defendant's resistance to Plaintiffs' claims has been considerable. The parties have vigorously disagreed with each other on numerous key factual and legal issues, including, *inter alia*, the issues identified in Section VI.A above. Should litigation continue, Defendant would in all probability move for summary judgment and either party would potentially appeal any adverse rulings or verdicts. The inevitable motion practice could easily extend the litigation for several more years, and any trial on the action could last several weeks. Absent the settlement, it is uncertain when this litigation would end even if Plaintiffs were successful at trial. In such circumstances, Plaintiffs would likely obtain no recovery for years. The fact that the settlement, if approved and becomes effective, will eliminate such

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

expenses, delays, and uncertainties, favors its approval. *See Officers for Justice*, 688 F.2d at 629 (finding that the immediate and tangible benefits to the class members from the settlement outweighed any speculative judgment that may be obtained after trial and appeal). Accordingly, by reaching this settlement, the parties have avoided further protracted litigation and established a means for a more prompt resolution of the Plaintiffs' claims against Defendant, while providing meaningful relief and timely benefits.

### C.    The Risk of Mitigating FLSA Certification to Trial.

Courts also consider the risk that the FLSA certification the parties stipulated to in this case may be successfully challenged as the case proceeds toward trial. *See Linney*, 151 F.3d at 1242; *see*, *e.g.*, *Camp*, 2004 WL 2149079, at *10. Following discovery, a defendant may challenge certification of the FLSA class by filing a motion to decertify the class. *See Czubara v. Hamilton Mortg. Co.*, No. CV-05-3438 PHX-DGC, 2006 WL 5526617, at *1 (D. Ariz. June 5, 2006). If a decertification motion is filed, the plaintiffs' burden of proving that they are similarly situated is much heavier than when the plaintiffs originally sought certification before discovery, as the Court must conduct a detailed evaluation of specific facts and issues based upon the discovery obtained by the parties. *Id.* Motions for decertification are fairly common in FLSA cases. *See Camp*, 2004 WL 2149079, at *10 (acknowledging the high probability that Defendant file motions to decertify FLSA classes after discovery).

Defendant believes that differences amongst Plaintiffs will support a decertification motion. For example, Defendant will argue that the Plaintiffs are not similarly situated because individual circumstances related to how and where they performed their job duties differentiated the CSRs. Plaintiffs would vehemently oppose the motion and believe they would be successful. Nonetheless, if Defendant sought decertification in this case, Plaintiffs' burden of showing that they are similarly situated would be heavier, more fact-intensive, and require substantial Court analysis. This potential risk of decertification therefore further supports the settlement.

### D.    The Range of Possible Recovery.

4885-4312-5042

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

The settlement amount viewed in light of the range of possible recovery also supports the reasonableness of this settlement. In assessing this factor, "the Court is to 'determine the value of the settlement in light of the potential for recovery.'" *Police Officers v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). But in making this comparison, "the trial judge ought not try the case in the settlement hearings." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). And, it should not "be forgotten that compromise is the essence of a settlement." *Id.* Indeed, as explained by the court in *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo.1974):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

64 F.R.D. at 624 (*quoted in Police Officers*, 188 F.R.D. at 458-59); *see also Camp*, 2004 WL 2149079, at *5 (approving FLSA collective action settlement, noting that "the court is aware, as the parties must also be, that a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution'") (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liabl. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)). Further, the settlement amount need not represent a specific percentage of the maximum possible recovery. *See Selk*, 159 F. Supp. 3d at 1174 (*citing Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.")).

Here, Defendant has agreed to a settlement that provides Plaintiffs with the type of relief intended under the FLSA and sought in this litigation: compensation for alleged unpaid overtime and court costs and attorneys' fees in bringing this lawsuit. *See supra*, Section III. And, the settlement payments directly relate to each Plaintiffs' length of employment and approximate overtime rate. *See Barrera v. US Airways Grp. Inc.*, No. CV-12-02278-PHX-BSB, 2014 WL 12639342, at *2 (D. Ariz. May 23, 2014); *In re Sepracor*

*Inc. Fair Labor Standards Act (FLSA) Litig.*, No. CV-09-1409-PHX-DGC, 2009 WL 3253947, at *2 (D. Ariz. Oct. 8, 2009.) Accordingly, the settlement is fair and reasonable because, if approved, Plaintiffs will have recovered the relief they sought through this lawsuit. *See*, *e.g.*, *Cotton*, 559 F.2d at 1330 ("The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms."); *Access Now, Inc. v. Cunard Line Ltd., Co*., No. 00-7233-CIV, 2001 WL 1622015, at *1 (S.D. Fla. Oct. 31, 2001) ("Plaintiffs have obtained much of the relief they sought in their complaint, weighing heavily in favor of the settlement's approval.").

Moreover, the proposed settlement provides monetary payments for Plaintiffs and each Opt-In Collective member who allegedly worked within the statute of limitations. The average payment per eligible individual, which includes Plaintiffs, is $416.76, with the individual amounts ranging from $3.24 to $2,254.32. This range is within the range of reasonableness for an FLSA collective action. *See, e.g.*, *Camp*, 2004 WL 2149079, at *6-7 (upholding FLSA collective action settlement where average settlement amount was $273 for each member of one class and $503 for each member of another class).

Further, although these amounts vary based on the factors discussed above (*e.g.*, alleged length of employment), Plaintiffs' counsel roughly estimates that the settlement represents 31.99% of what Opt-In Plaintiffs would have recovered in alleged unpaid overtime wages if Plaintiffs were to be fully successful at trial on every claim and issue in the case. This percentage is also within the range of reasonableness for an FLSA collective action. *See*, *e.g.*, *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 256 (N.D. Ca1. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery). As the amounts obtained here exceed the range of reasonableness, approval of the settlement is warranted.

**E.    <u>The Extent of Discovery Completed and Stage of the Proceedings.</u>**

4885-4312-5042

The extent of discovery and stage of the proceedings further support approval of the proposed settlement. *Linney*, 151 F.3d at 1242. As explained above, this case was not in its infancy when settlement was reached. For more than a year prior to reaching settlement, the parties had been actively investigating Plaintiffs' claims. Consequently, the parties had a solid base of information upon which to negotiate this settlement. *See*, *e.g.*, *Frank*, 228 F.R.D. at 179, 185 (approving proposed settlement where the court found that "the parties [had] engaged in extensive discovery to identify the potential class members and to calculate the number of overtime hours worked and the relevant rates of pay," which included reviewing "several hundred pages of records").

### F.    Scope of the Release is Fair and Reasonable.

This settlement releases all claims between Defendant and Plaintiffs arising out of the allegations/claims raised in Plaintiffs' Complaint in this action, any and all claims under the FLSA, any and all claims arising out of any state wage, minimum wage, or overtime laws, including without limitation, the Arizona Wage Act, and any claims relating to unpaid wages, minimum wage, and overtime compensation against Defendant. Because this release provision generally tracks the wage and hour claims asserted in the lawsuit, the scope of the release does not weigh against the settlement being fair and reasonable. *See*, *e.g.*, *Selk*, 159 F. Supp. 3d at 1178.[4]

### G.    The Experience and Views of Counsel and Participating Plaintiffs.

In reviewing a class settlement, the Court should accord "great weight" to Plaintiffs' counsel's recommendations. *See Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148-49 (8th Cir. 1999); *Cotton*, 559 F.2d at 1330; *Police Officers*, 188 F.R.D. at 461. Here, Plaintiffs' counsel are experienced class action, employment, and general litigation attorneys. Utilizing their experience, Plaintiffs' counsel vigorously litigated this case for over a year and successfully negotiated an excellent settlement for Plaintiffs. Plaintiffs' counsel submit that the proposed settlement is in Plaintiffs' best interests. *See* Declaration of Jacob Rusch

---

[4] The release provision only applies to those who timely file their consents to opt-in and join in the settlement.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

in Support of Joint Motion for Approval of Proposed FLSA Collective Settlement and Supporting Memorandum ("Rusch Declaration"), attached hereto as **Exhibit 2**.

Further, each of the Additional Plaintiffs consented to have Plaintiffs' counsel represent them in the case. *See, e.g.*, Dkt. 9, Consent to Sue for Mikiko Stott.  In that regard, the Named Plaintiff took an active role in the settlement negotiations and understood his obligations to represent the best interests of the FLSA collective.  *See* Ex. 2, ¶¶ 24-26.  The Named Plaintiff was engaged in the discussions regarding the settlement and acted in the best interests of all Additional Plaintiffs and Opt-In Collective Members.  Plaintiffs are pleased with the result achieved in this settlement.  *Id.*

The relevant factors considered in the Ninth Circuit demonstrate that the proposed settlement in this case is fundamentally fair, adequate and reasonable and, therefore, should be approved.

## VII.   **THE REQUESTED ATTORNEYS' FEES AND COSTS AWARD IS FAIR AND REASONABLE.**

### A.   **Reasonable Attorneys' Fees and Costs are Mandatory in FLSA Cases.**

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover his unpaid wages.  29 U.S.C. § 216(b) ("The court in such action <u>shall</u>, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee <u>to be paid by the defendant</u>, and costs of the action.") (emphasis added); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorneys' fee.").

The reason for requiring the employer to pay the employee's legal fees is simple.  As the Ninth Circuit explained, "[u]nder the FLSA, 'Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'"  *Sinyard v. C.I.R.*, 268 F.3d 756, 761 (9th Cir. 2001) (*quoting Maddrix v. Dize*, 153 F.2d 274 (4th Cir. 1946)).  Indeed, "allowing an award of attorney's fees under FLSA cases ... encourage[s] employees to vindicate what Congress considers an important

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4885-4312-5042

1  right to receive wages designed to ensure a minimum standard of living." *Fisher v. Stolaruk*

2  *Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) (further explaining that "the plaintiff acts

3  as a private attorney general"); *see also Houser v. Matson*, 447 F.2d 860, 863 (9th Cir.

4  1971) (holding that the district court "frustrated Congressional purpose by leaving the onus

5  of counsel fees entirely upon the successful employees").

6         And, unlike in other types of cases, in an FLSA case, "[s]ettlement does not preclude

7  an award of fees." *Fisher*, 648 F. Supp. at 486.  The employer's payment of the employee's

8  attorneys' fees is still mandated in such cases.  *See*, *e.g.*, *Diaz v. Robert Ruiz, Inc.*, 808 F.2d

9  427, 428 (5th Cir. 1987) (plaintiff entitled to attorneys' fees for FLSA claims, where parties

10  settled on eve of trial regarding merits of case, but not attorneys' fees); *Yue Zhou*, 2007 WL

11  2298046, at *1 (N.D. Cal. Aug. 8, 2007) ("Settlement of FLSA overtime claims cannot

12  preclude an award of attorneys' fees by the court . . . under the FLSA an award of reasonable

13  fees is mandatory.") (citing 29 U.S.C. § 216(b)); *Jaquez v. Maeweathers Transp., Inc.*, No.

14  6:06-cv-1859, 2007 WL 1200993, at *3 (M.D. Fla. April 23, 2007) ("[g]iven the mandatory

15  award of reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b), early resolution of

16  FLSA claims through settlement are encouraged" to keep the amount of attorneys' fees

17  reasonable — not to extinguish them).  Thus, the payment of Plaintiffs' reasonable

18  attorneys' fees and costs is not only proper but required.

19         **B.    An Agreed-Upon Fee Carries a Presumption of Reasonableness.**

20         It is common for parties to a class settlement to agree that the defendant will pay

21  attorneys' fees to Plaintiffs' counsel separately from the benefits provided to the class.  Such

22  an arrangement poses no particular problem for court approval.  *See*, *e.g.*, Fed. R. Civ. P.

23  23(h) ("In an action certified as a class action, the court may award reasonable attorney fees

24  and nontaxable costs authorized by law or by agreement of the parties.").  Federal courts

25  encourage litigants to resolve fee issues by agreement whenever possible.  As the United

26  States Supreme Court explained, "[a] request for attorney's fees should not result in a

27  second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley*

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

4885-4312-5042

*v. Eckerhart*, 461 U.S. 424, 437 (1983).[5]

Further, as explained by the court in *In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), appeal dismissed, 33 F.3d 29 (9th Cir. 1994), fees negotiated by the parties at arm's length carry a presumption of reasonableness:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

*Accord* Manual for Complex Litigation § 30.42, at 240 (3d ed. 1997) (a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Moreover, the virtue of a fee negotiated by the parties at arm's length is that it is, essentially, a market-set price. Defendant has an interest in minimizing the fee; Plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what a court may award if the matter were litigated. In *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed this type of market-based approach to evaluating fee requests: "it is not the function of judges in fee litigation to

---

[5] *See*, *e.g.*, *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon*, 150 F.3d at 1029 (upholding the district court's award of attorneys' fees, citing lack of abuse of discretion, where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

determine the equivalent of the medieval just price." *Id.* at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* "Markets know market values better than judges do." *Id.* at 570. "The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation . . . ." *Id.* at 572.

Here, this is not a common-fund settlement where Defendant typically has little interest in how much of the settlement consideration is allocated to attorneys' fees. Rather, here, in arm's-length negotiations, Defendant, a sophisticated business entity with in-house counsel who was aided by experienced and competent counsel with specific experience litigating FLSA cases, sought to minimize the fees that it had to pay in addition to the money it will be paying Plaintiffs, and therefore Defense counsel had a keen interest in negotiating the smallest amount their clients would have to pay.

Additionally, as explained in *McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006), if the attorneys' fees and expenses are paid "entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members," as opposed to where the award of fees is to be paid from a common fund and essentially is "money taken from the class," and "then the Court must carefully review the award to protect the interests of the absent class members." *Id.* at 392 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123-24 (2d Cir. 2005) and *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *accord Su*, 2006 WL 4792780, at *3 (explaining that the court has "greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fees" when those fees are not being deducted from the employee's settlement).

Indeed, the holding in *McBean* is consistent with the purpose of the Court's approval of attorneys' fees — to ensure that the employees' recovery is not unreasonably reduced by attorneys' fees, not to protect the employer from his own bargain. *See Jaquez v. Maeweathers Transp., Inc.*, No. 6:06-CV-1859, 2007 WL 1200993, at *3 (M.D. Fla. Apr. 23, 2007) (explaining that a court has more discretion in determining the reasonableness of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4885-4312-5042

attorneys' fees, "where separate amounts are set forth for the payments of unpaid wages and payments for attorneys' fees" because the purpose of the court's review "is to ensure that an employer does not take advantage of an employee ... not to ensure that the employee does not overcharge the employer"). Accordingly, courts are permitted to award an agreed-upon amount for attorneys' fees especially where that amount is in addition to and separate from the defendant's payment to the class.

Consistent with the intent of the FLSA, Plaintiffs' counsel in this case are not taking any portion of the settlement to cover their attorneys' fees and only a minimal amount to cover the expenses on the case. This amount is completely separate and apart from and will not in any way diminish Plaintiffs' settlement for alleged uncompensated work performed. Accordingly, as the attorneys' fees award requested in this case was agreed to by all parties and does not diminish Plaintiffs' relief, the Court should approve the settlement agreement.

**C.**   **The Attorneys' Fees are Not Measured Against Plaintiffs' Payment for Alleged Uncompensated Time Worked.**

If attorneys were not awarded fees, very few would accept these types of cases where the recovery is relatively small. For this reason, fee awards in FLSA and other socially beneficial cases are not measured in relation to the underlying monetary relief obtained for the plaintiffs. *See Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988); *see, e.g.*, *Int'l Bhd. of Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr., Inc.*, Nos. 03-17379, 04-16013, 136 Fed. Appx. 36, at *2 (9th Cir. May 11, 2005) (upholding attorneys' fee award of more than $200,000 in action where the plaintiff's individual recovery was less than $50,000); *Morales v. City of San Rafael*, 96 F.3d 359, 362-64 (9th Cir. 1996) (reversing $20,000 attorneys' fee award where counsel had requested nearly $140,000 in fees, because it appeared to the Ninth Circuit that the district court was improperly trying to limit the fee award based on the size of the plaintiff's award). Thus, in FLSA cases, an award of "reasonable" attorneys' fees and costs is mandatory and is not measured against the size of Plaintiffs' recovery.

Moreover, awarding fees "encourages plaintiffs to bring legal actions even where

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

the amount in question may be relatively small in comparison to other civil actions in the federal courts." *Fisher*, 648 F. Supp. at 487.  In fact, as explained by the Sixth Circuit, courts are encouraged to reward counsel who undertake such socially beneficial cases:

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication or congressionally identified policies and rights.  Indeed, we have upheld substantial awards of attorneys' fees even though a plaintiff recovered only nominal damages.

*Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (citations and internal quotations omitted); *see also Frank*, 228 F.R.D. at 189 ("As already noted, were it not for this class action, many of the plaintiffs' claims likely would not be heard.  In addition, if this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorneys — these or others — would likely be willing to take on future small-scale class actions such as this.").  The relevant inquiry in this type of case therefore is whether the fees are reasonable, not how they compare to the employee's recovery, which is often small.

And, as the court noted in *Lopez v. Youngblood*, in approving the agreed-upon fee award to be paid separately from class members' recovery, Defendant "would receive an unjustified windfall if the requested fees were not granted in full," because "one important purpose of the class action device is that Defendant should not benefit from their wrongdoing, and should be deterred from doing so by being vulnerable to class actions to remedy their wrongful conduct."  2011 WL 10483569, at *15 (E.D. Cal. Sept. 2, 2011).  The *Lopez* court also reasoned "it is critically important to provide appropriate incentives for attorneys to undertake the risk of class litigation.  To the extent they are not properly awarded when they are successful, that undermines the deterrent purpose of the class action mechanism."  *Id.*

**D.**    **The Requested Fees Are Supported by Plaintiffs' Counsel's Lodestar, Further Establishing That it is Fair and Reasonable.**

4885-4312-5042

The reasonableness of the agreed upon amount for attorneys' fees is further supported by looking at the lodestar. *See McBean*, 233 F.R.D. at 392 n.11 (in awarding $500,000 in attorneys' fees agreed to by the parties, holding that a roughly calculated lodestar of $420,000 supported that award). The lodestar presumptively reflects reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see, e.g.*, *Childress v. Darby Lumber, Inc*., 357 F.3d 1000, 1011 (9th Cir. 2004) (affirming trial court's attorneys' fee award twice exceeding the amount of recovery because it was calculated using the lodestar method).[6]  The lodestar is calculated by multiplying the reasonable number of hours expended in the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). However, in calculating the lodestar for this purpose — as a cross-check — the Court need not "attempt to rigorously calculate a lodestar figure." *Mclean*, 233 F.R.D. at 392 n.11. As shown below, the lodestar in this case fully supports the parties' agreement to have Defendant pay the agreed upon $75,000.00 in attorneys' fees and costs.

In determining the reasonableness of hours expended for lodestar purposes, courts consider, inter alia, the novelty and difficulty of the issues and the level of opposition during the litigation. *See Shipes v. Trinity Indus*., 987 F.2d 311, 321 (5th Cir. 1993). Here, Plaintiffs' counsel were opposed by Snell & Wilmer LLP— a law firm with a reputation for exceptional work in defending employment actions. Plaintiffs' counsel showed demonstrable skill and quality by engaging in a concerted effort to obtain Plaintiffs' maximum recovery. Plaintiffs' counsel expended numerous hours, *inter alia*, interviewing the Named Plaintiffs, Additional Plaintiffs, engaging in informal discovery, analyzing documents, and negotiating this settlement. Over more than a year, Plaintiffs' counsel have

---

[6] The lodestar is the "guiding light" in FLSA cases as well. *See City of Burlington*, 505 U.S. at 562 ("[C]ase law construing what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes.); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (noting that "statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures"); *Beck*, 2005 WI. 235510, at *1 (reasoning that "in fixing the amount of attorney fees [in FLSA cases], courts generally begin with a 'lodestar' calculation").

- 23 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

reasonably spent about 178 hours working on this lawsuit. *See* Ex. 2, ¶¶ 14. The total amount of hours expended in successfully and diligently prosecuting this action therefore is fair and reasonable for the services provided—especially considering the amount of attorneys' fee and costs agreed upon is less than the total fees and costs incurred to date.

In determining the reasonableness of hourly rates, courts consider the experience, reputation, and ability of the attorneys and the skill required by the attorneys. *Shipes*, 987 F.2d at 320. However, counsel's rates are prima facie reasonable when (i) agreed to by the parties, (ii) computed at no more than the attorneys' customary billing rate, or (iii) within range of the prevailing market rate. *See Camp*, 2004 WL 2149079, at *20. For example, in *Su*, although the district court believed that $640 an hour was a high rate, it nevertheless approved the attorneys' fees requested because the defendant had agreed to pay them:

> Defendant does not contest the number of hours, the billing rate, or amount of attorney's fees and costs. In fact, Defendant joins in moving for entry of judgment, and stated that it believes that the attorney's fees are reasonable. The Court, therefore, accepts the parties' stipulation, and finds that an award of $120,000 in attorneys' fees and costs is reasonable.

*Su*, 2006 WL 4792780, at *5.

Here, Plaintiffs' counsel's customary billing rates ranged from $325.00 to $700.00 an hour. *See* Ex. 2, ¶¶ 9-11. At their standard billing rates, Plaintiffs' counsel's lodestar is approximately $91,.000.00. *Id.*, ¶ 15. Thus, their fees and costs for $75,000.00 are reasonable for this type of case and the amount of work performed—especially considering there is still substantial work to be done to effectuate and administer the settlement in the coming months. As the lodestar cross-check confirms that the final element of the settlement agreement — the attorneys' fees provision — is reasonable, the Court should approve the settlement.

## VIII.    THE NAMED PLAINTIFF'S INCENTIVE AWARD IS REASONABLE

Incentive awards "are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has recognized that incentive, or service, awards serve an important function as they "are intended to compensate class

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. Incentive awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation, and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Named Plaintiff has taken an active role in the litigation and has protected the interests of the Opt-In Collective. *See* Ex. 2, ¶¶ 24-26. Named Plaintiff frequently communicated with counsel to obtain updates and status reports, and to make sure the action continued to move forward. *Id.* Named Plaintiff made himself readily available to Plaintiffs' counsel to discuss the case and to make key decisions. Named Plaintiff prepared an extensive declaration in support of a potential motion for conditional certification, since nullified by this agreement between the parties. Named Plaintiff reviewed the critical documents in this case, including settlement documents. *Id.* Thus, the incentive award in the amount of $5,000.00 to Named Plaintiff is well within the range of what courts have approved as reasonable. *See, e.g., Selk*, 159 F. Supp. 3d at 1178 (approving $5,000 incentive award in FLSA case); *Evans*, 2014 WL 1724891, at *7 (noting that an award of $5,000 to a plaintiff is "presumptively reasonable"); *Kellogg Co.*, 2013 WL 6531177, at *8-9 (approving $5,000 service award as "warranted" and "well within if not below the range awarded in similar cases") (citing cases); *In re Mego Fin.*, 213 F.3d at 463 (approving $5,000 service awards).

## IX.   **CONCLUSION**

This settlement is comprehensive in its scope, is fair and even-handed in its application, and is of substantial monetary economic benefit to Plaintiffs, while releasing Defendant from the claims associated with this lawsuit. The parties therefore respectfully request that the Court approve the proposed settlement as a fair, reasonable and adequate resolution of the case.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4885-4312-5042

1

2

DATED this 9th day of September, 2022.

3

JOHNSON BECKER P.L.L.C.                    SNELL & WILMER L.L.P.

4

5

By: *s/ Jacob R. Rusch (with permission)*      By: *s/ Benjamin A. Nucci*

6

Jacob R. Rusch                             Joshua Woodard
Zackary S. Kaylor                          Benjamin A. Nucci

7

444 Cedar Street, Ste. 1800                Audrey E. Chastain
St. Paul, MN 55101                         One Arizona Center
                                           400 E. Van Buren

8

BEGAM MARKS & TARULSEN P.A.                Phoenix, AZ 85004-2202
Richard P. Traulsen                        *Attorneys for Defendant*

9

11201 North Tatum Blvd., Ste. 1800
Phoenix, AZ 85028-6037

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -

4885-4312-5042